In the Matter of the Appraisal under the Collateral Inheritance Tax Act, passed June 10, 1885, of the Property of CLARISSA E. CURTIS, Deceased.

*Collateral Inheritance Tax Act of* 1885 — *taxation of contingent remainders.*

The will of a decedent devised and bequeathed property to the executors in trust, to apply the income to the use of persons who were exempt from taxation under the Collateral Inheritance Tax Act of 1885 (Chap. 483), for their respective lives, and devised and bequeathed all the remainders upon the termination of such life estates to persons who were subject to taxation under the act, in such terms that the interests of such remaindermen were all contingent upon their surviving the life beneficiaries, and if none should so survive the property would not pass under the will and vested in persons exempt from taxation, so that it was impossible to decide at the death of the decedent who would ultimately be entitled to the respective remainder values, or whether the property would vest in possession in persons liable to the inheritance tax or in persons exempt therefrom.

*Held,* that no appraisement of the contingent interests of the remaindermen should be made, or the payment of any tax be imposed thereon, immediately on the death of the decedent, under section 2 of the act; but that such appraisement and taxation should be postponed until such interests become vested in possession on the termination of the trusts, at which time, if vested in parties liable to taxation, the tax was to be fixed and exacted as provided by section 13 of the act.

APPEAL by William Mitchell, as sole acting executor and trustee of the will of Clarissa E. Curtis, deceased, from portions of an order of the surrogate of the county of New York, entered in the office of the surrogate on the 10th day of February, 1893, assessing and fixing a collateral inheritance tax, and from an order of the Surrogate's Court of said county, entered in the office of the surrogate on the 25th day of July, 1893, affirming the first order.

*Cortlandt Irving,* for the appellant.

*Edward Hassett,* for Theodore W. Myers, comptroller of the city of New York, respondent.

O'BRIEN, J.:

The testatrix died November 3, 1886, leaving a will which was admitted to probate, and the question presented on this appeal is as

FIRST DEPARTMENT, NOVEMBER TERM, 1893.          [Vol. 73.

to whether certain remainders to nieces and nephews are liable at the present time to pay any collateral inheritance tax, under chapter 483 of the Laws of 1885.

By the fourth clause of the will the testatrix gave the remainder of her personal property to her executors in trust, to receive the income, and apply the same to the use of her daughters, Clara Isabella Curtis and Julia Frances Munson, during their lives in equal shares, and to the survivor for life. By the fifth clause she devised her real estate or its proceeds to her executors in trust, to divide into eight equal portions, and to receive the income therefrom and apply three portions to the use of her daughter Clara Isabella Curtis during her life, three portions to the use of her daughter Julia Frances Munson during her life, one portion to the use of her granddaughter, Edith Hastings, during her life, and one portion to the use of her grandson, Ernest Hastings, during his life. By the seventh clause of her will the testatrix devised and bequeathed all the remainders upon the said life estates in the real and personal property as follows: One-half thereof absolutely to her nieces, Mary Helen Ridgway and Clara Adelaide Tatchenhorst (now Clara A. James), children of Edwin Racy, "and the other half thereof absolutely to my nephews, Charles H. Racy, Walter Racy and Harold Racy, children of my deceased brother, William H. Racy, that is to say, to such of my said nieces and nephews as shall be living at the time of the successive termination of every such trust in such respective portions and to the issue then living of each of said nephews and nieces then deceased, the issue taking *per stirpes* and not *per capita*."

Ernest Hastings, to whom the testatrix bequeathed one-eighth of her income during his life, died unmarried in June, 1887. Harold Racy and Walter Racy, two of the three persons to whom she bequeathed one-half of the residue of her real and personal property by the seventh clause of her will, died unmarried, Harold before the death of the testatrix, and Walter after.

The learned surrogate appointed an appraiser to fix and report the value of the interest liable to pay the collateral inheritance tax, and such appraiser reported the values of the various interests of said nephews and nieces in the property of the testatrix, but stated that none of them, except the said interest of Ernest Hastings, which

vested upon his death in the four nieces and nephews, was at present liable to taxation, as, " under the terms of the will, it cannot now be determined who will ultimately be entitled to the respective remainder values above mentioned."

With this view the learned surrogate did not agree, saying in his opinion : "The appraiser (however) has fallen into error in concluding that the tax cannot now be assessed. The tax upon the remainder became due and payable, under section 2, immediately upon the death of the decedent, and the act likewise provides that the person whose interest is so taxed may defer the actual payment thereof by filing a bond and renewing the same from time to time until it vests in possession. Should the remainderman die prior to the decease of either of the life tenants, the remainder would then vest in her issue, who would then be the persons required to pay the tax, or continue the security for its payment, until the estate vested in possession."

Consonant with these views the matter was remitted back to the appraiser, who thereafter filed his report as amended, fixing the amount of the tax for which the contingent interests were liable.

It is conceded that the several life interests created by the will were not liable to the payment of any tax. The executor has paid the tax on all property that vested in the nephews and nieces upon the death of Ernest Hastings.

Thus the present appeal is taken from those portions of the order made upon the coming in of the appraiser's reports which declared such contingent interests liable to pay at the present time any tax, and from the order affirming the same as fixed by the appraiser.

In the conclusion arrived at by the learned surrogate we are unable to agree. The provisions of the will show that, as to the nephews and nieces of the testatrix, each takes an interest which is contingent upon surviving the termination of the trusts, and unless they so survive they will never receive such interests in possession. As urged by appellant, time is of the essence of the gift, and futurity is annexed to the substance of such gift. There is no present gift. Should any of the nephews or nieces die before the termination of the trusts, leaving no issue (as has happened in the case of one of them, Walter Racy, who died unmarried in December, 1891), the interest of those so dying will entirely cease and pass

to the survivors.  Should all of the nephews or nieces die before the life beneficiaries, without children, or should they die, leaving children, if the children should die before the termination of the life estates, as the will makes no further provision, the property, including said remainders, would become intestate and vest by law absolutely in Clara I. Curtis, Julia F. Munson and Edith Hastings, the daughters and granddaughter of the testatrix, all of whom are exempt from taxation by the law of 1885.

It is, therefore, clear that at the present time it is impossible to tell whether such property and the remainders therein would vest in possession in persons liable to pay such tax or in persons exempt therefrom, nor can it be determined until such trusts terminate. Neither is it possible, in the other aspect, assuming that the life interests should terminate, to determine which of the nephews and nieces, or the children of such of them as may have died, will succeed to the property.

It would appear that the original position upon these facts taken by the surrogate was, that this was in principle analogous to his decision in *In re Clark's Estate* (5 N. Y. Supp. 199).  As therein said : " To make the tax accrue at once two things are necessary : *First,* to determine definitely the fair market value of the property subject to the tax ; and, *second,* the person to whom such property passes.  *  *  *  The act does not say that where property is left to A., an exempt person, for life, with a contingent life estate to B., that A. shall be taxed to pay for B.'s prospective enjoyment, even though B. may never enjoy it.  The act expressly exempts certain persons and taxes others, and it cannot be rightly held that where property was left for life to an exempt person, and after his death for life to one not exempt, should she survive, that in that event the *corpus* of the estate which is exempt should be diminished by the amount of the tax upon the happening of an event which would not make the life tenant liable to the tax, whether it did or did not happen, and which, if the contingency should fail, might throw the estate back to persons who were exempt.  Neither the first estate nor the last should be taxed for the contingent second estate.  It must be that in case such as this, where it is absolutely impossible to decide to whom the property will go, the intention is that the appraiser shall report the fair

market value of the property at decedent's death, and that the matter must be regarded as suspended until the contingency does or does not happen, at which time, that is, at the death of the life tenant, it can be determined to whom the property will pass, and whether or not it is subject to the tax."

With this reasoning of the learned surrogate we entirely concur, and we think that the application of the same rule to the facts in this case would have justified the appraiser in reporting as was there done, "the fair market value of the contingent interests at the date of the death of the decedent," and in further reporting that in view of the contingent character of the bequests, he could not report the remainder as presently taxable.

The reason for not applying the principles laid down in *In re Clark* to the interests here sought to be taxed is presumably to be found in the final statement in the opinion of the surrogate, that he did not decide the questions here presented until the Court of Appeals had reached a determination in the *Stewart* case, which is reported in 131 N. Y. 278. We do not regard that case, however, as in any way overruling the principle applied in *In re Clark*. The *Stewart* case is authority for the positions correctly stated in the head note, that the Collateral Inheritance Act of 1885 contemplates not only the taxation of such interests as are capable of valuation at the death of the decedent, but every interest, immediate or future, derived under him not excepted by the act; that contingent interests given by a will which after the death of the testator are converted, before the happening of an event upon which they are limited, into actual vested estates, can then be appraised and taxed under the provision of said act (§ 13), which authorizes the surrogate to appoint an appraiser of property subject to the payment of the tax as often as and whenever occasion requires, who shall appraise the same at its fair market value.

As shown by that case, there are two classes intended to be provided for by the act of 1885, and these are covered by two different sections, viz., sections 2 and 13 of the act. Section 2 relates, as stated in the opinion, to "cases where property is devised or bequeathed for life or a term of years to a person whose interest is exempted from the payment of any tax, with remainder over to collaterals or strangers in blood. In these cases the section prescribes

that the (entire) property passing under such a devise or bequest shall be appraised immediately after the death of the decedent at what was the fair market value thereof at the time of the death of the decedent, and after deducting the value of the estate for life or years, that the tax prescribed by the act on the remainder shall be immediately due and payable."

All other property which is the subject of taxation comes within the class controlled by section 13, which authorizes the surrogate to appoint an appraiser " as often as and whenever occasion requires." And as said in the *Stewart* case : " It is to be noticed that this section does not, as does the second section, require the valuation to be made immediately upon the death of the decedent, * * * nor * * * that the property appraised thereunder shall be appraised at what was the fair market value thereof at the time of the death of the decedent, as is required in the cases falling under the second section."

In another part of the opinion it is said : " But we think that the thirteenth section does include cases like the present, and that contingent interests given by a will which, after the death of the testator, are converted by the happening of the event upon which they are limited into actual vested estates may then be appraised and taxed under the provisions of section 13."

We think that the *Stewart* case and the one at bar are analogous in principle, and that the designation of the person under appointment in the former is equivalent to the survivorship of the nephews and nieces of the testatrix after the death of the life tenants. When the contingency is removed by the termination of the trusts, an appraisement can be made and the tax fixed with perfect fairness to all parties interested. And applying the reasoning in the two cases referred to (*In re Clark* and the *Stewart* case) to the facts here appearing, no appraisement of the contingent interests of the collateral relatives should be attempted to be made, nor any tax imposed thereon, until such interests become vested in possession, and, by the removal of the contingency, it appears whether they have so vested in parties liable to taxation or in parties exempt.

The injustice of any other conclusion can be seen when we remember, as said in *The Matter of Cager* (111 N. Y. 347), " the tax is upon the individual," and how it would work, if its payment

could be enforced against all the nephews and nieces who are living at the death of the testatrix, and who might or might not eventually succeed to the estate, may be shown by taking the case of one of these collaterals who died unmarried after the testatrix, and whose remainder interests under the provisions of the will have passed to others. He neither enjoyed any benefit, nor had he any power of disposition. Not having, therefore, any beneficial interest, it would be a great injustice to hold that he was obliged to pay a tax upon such interest, and now that he is dead that his estate should be charged with such payment, when it would inure entirely to the benefit of others.

With respect to the others who are still living, although by reason of their death before the life tenants they may never come eventually into possession of any interest in the estate, the tax, if now assessed and held to be payable, can be enforced against them, which, if they are unable to pay it, might result in their imprisonment, under the power given to the surrogate to enforce a decree by proceedings for contempt. (Code Civ. Proc. § 2555; *In the Matter of Prout*, 19 N. Y. St. Repr. 318.)

A construction of the act, therefore, which might result in injustice and hardship to those intended to be benefited should not be resorted to, unless the express provisions of the act require such a construction. This, as we have endeavored to point out, is not necessary; and although the fair market value of the contingent interests at the date of the death of the decedent might have been fixed, we think it was wrong to determine the value of the interests, because not capable of valuation, of each of the nephews and nieces in the property, but that, as was done in *In re Clark*, " in view of the contingent character of the bequests," the appraiser should have reported the remainders as not at present taxable.

Our conclusion, therefore, is that the orders appealed from should be reversed, with costs and disbursements.

Van Brunt, P. J., concurred.

Orders reversed, with costs and disbursements.