Lawrence E. Kahn, S.
This proceeding brought by the United States Attorney representing the United States Government is an action to cite for contempt the respondent herein, James F. Dalton, Esq., executor of the estate of William Kahr. The Government alleges that respondent, as executor of the Kahr estate "has wholly failed, refused and wilfully neglected to obey the directions of the final decree to pay the United States of America on or before June 27, 1972 the sum of $9,399.25”. It is also alleged that respondent has "wilfully neglected to comply with an information subpoena, served upon the executor, in accordance with CPLR §§ 5224, in an attempt by the United States Government to enforce a secondary judgment against the executor in the sum of $18,113.66”.
Before considering the applicable law it is first necessary to discuss some of the salient background facts involved.
The original decree issued by Acting Surrogate Martin Schenck on June 7, 1972 ordered respondent as executor and judgment debtor to make payment of all primary judgments which had been awarded to the United States of America within 20 days of the decree. As the decision of Judge Schenck states, this decree was made "following several hearings at some of which the executor failed to appear and offered no satisfactory excuse and adjournments having been granted from time to time at the request of the executor”. A hearing was conducted on May 9, 1972 to resolve the issues. At that time, the executor was given until May 23, 1972 to submit information as to the assets of the estate and to render an "amended account”. According to Judge Schenck, "Although the court specifically instructed the Executor to file such material by May 23rd as an absolute deadline, taking into consideration the previous long and unwarranted delays caused by the Executor, he has failed to submit any such material”. Instead, respondent requested an extension to May 25 assuring that he would comply with the court’s direction by that date. The court in response arid of its own volition allowed an additional 11 days. During that additional time no word was received from respondent. Thereafter, Judge Schenck entered both primary and secondary. judgments *365 against respondent. The primary judgment awarded $9,399.25 to the United States Government on account of its claim for taxes owed. In addition, after several surcharges were made against respondent, a "secondary” judgment in the amount of $18,113.66 was awarded to the United States Government and was to be credited against the balance on the Government’s tax claim as heretofore established. This amount was to be regarded as a "secondary” judgment in favor of the Government separate from and in addition to the aforesaid "primary” judgment of $9,399.25 already awarded.
Respondent was allowed 20 days from the date of the decree to make the foregoing payments. The court stated that failure to do so "will constrain the court to consider such proceedings as may be indicated under the laws of the State of New York”. The court also stated that "Enforcement of the 'secondary’ as well as 'primary’ judgment will be left to the exercise of appropriate action by the parties to whom the judgments have been awarded as indicated herein”.
To date, respondent has not complied with such decree, nor has he complied with an information subpoena served upon him, as required by CPLR 5224, in an attempt by the United States of America to enforce the secondary judgment against said executor in the sum of $18,113.66. In addition, while the original return date for this pending contempt proceeding was September 27, 1975, it has been adjourned several times thereafter at respondent’s request. The first adjourned date was October 8. Thereafter this matter was adjourned at the request of respondent to October 16; October 28; November 13; November 20 and to December 4. Finally, on December 9, an unverified answer was filed by respondent. This answer "denies that the failure to obey the alleged decree was wilful”, "denies that the failure to respond to the subpoena was wilful”, and "denies that the alleged action was calculated to and actually did defeat, impair, impede and prejudice the rights of the petitioner”. As an affirmative defense, respondent asserts that he is "ready, willing and able to respond to said subpoena and will do so forthwith”. The respondent then requests that the petition herein be denied.
The court holds that such petition must be granted and that respondent shall be cited for contempt. In doing so, the court appreciates the serious nature of such relief. As stated in Hockeborn v Hockeborn (17 NYS2d 41, 43), "contempt is a drastic remedy and, before it is invoked, the right to use it *366 must be clear”. In the case at bar, the remedy is most appropriately invoked based upon respondent’s long and continual history of dilatory tactics and avoidance to fulfill his duties as fiduciary in this estate. This money judgment still remains open and totally unpaid. Respondent’s conduct constitutes a serious offense in that respondent was entrusted by the deceased to handle his affairs in a proper manner and respondent has failed to meet the trust and confidence that was placed in him. As an attorney, respondent owes an even greater duty as fiduciary to this estate and no court can tolerate conduct by an attorney which violates the sacred trust placed in him by a client.
Before ordering commitment, the applicable statutes and cases must be examined.
SCPA 606 states (citing applicable language):
"1. In any of the following cases, a decree or order of the court, directing the payment of money or requiring the performance of any act, may be enforced by serving a certified copy thereof upon the party against whom it is directed, and if he refuses or wilfully neglects to obey it, by punishing him for a contempt of court. * * *
"(d) Where the delinquent is a ñduciary and the decree relates to the estate, in which case the court may enforce the decree or order as prescribed in this section, either with or without requiring the issuance of an execution, or after the return of an execution, as it deems proper. ” (Emphasis added.)
SCPA 607 which deals with the manner of enforcement of a decree or order by punishment for contempt states (citing applicable language):
"A person interested in the compliance with a decree or order, directing the payment of a sum of money or the performance of any act, may present to the court a petition showing:
"1. One of the grounds prescribed in the preceding section [section 606],
"2. That a certified copy of the decree or order sought to be enforced has been personally served upon the person against whom it was entered, which service shall be equivalent to a personal demand upon the respondent for the payment of the sum directed to be paid, or the performance of the act directed by the decree or order to be performed, except where the delinquent is a ñduciary and the decree or order relates to the *367 estate [emphasis added], in which case the court may enforce the decree or order without service of a certified copy therein as herein provided,
"3. That the respondent has refused or wilfully neglected to obey such order or decree, and
"4. Praying that the respondent be directed to show cause why he should not be punished for contempt.”
Further on SCPA 607 states: "Upon the return thereof, if the court is satisfied that the respondent has refused or wilfully neglected to obey the decree or order, it may direct that a warrant of commitment issue against the respondent pursuant to section 757 of the judiciary law or punish the respondent under the provisions of the judiciary law.”
Before proceeding to a discussion of how these statutes have been construed, it is also appropriate to note section 775 of the Judiciary Law which provides that: "Where an offender, imprisoned as prescribed in this article is unable to endure the imprisonment, or to pay the sum, or perform the act or duty, required to be paid or performed, in order to entitle him to be released [emphasis added], the court, judge, or referee, or, where the commitment was made to punish a contempt of court committed with respect to an enforcement procedure under the civil practice law and rules, the court, out of which the execution was issued, may, in its or his discretion, and upon such terms as justice requires, make an order, directing him to be discharged from imprisonment”.
Let us now examine the case law which has interpreted these sections and apply them to the proceeding at bar. Much of the following discussion is contained in Warren’s Heaton, New York Surrogate’s Courts (Vol 1A, § 119).
As seen in SCPA 606 and 607, a decree may be enforced by punishment for contempt where said decree directs the payment of money. In the instant case, we have a decree ordering respondent as executor to pay moneys to the United States Government.
In order for such a decree to be enforceable by contempt proceedings, it must "direct without ambiguity and in language which may be readily understood by a layman, that the particular respondent against whom the remedy is invoked shall, at a stated time, perform a certain specific act or pay a stipulated sum of money to or for the benefit of an identified person”. (Matter of Battista, 176 Misc 85, 87.)
*368 As stated in Matter of Battista (p 86), citing Ross v Butler (57 Hun 110, 112): "If there is one thing which is well settled in reference to the power of the court to enforce by attachment its judgment or decree, it is that such judgment or decree shall be definite and certain; that there shall be no opportunity for ambiguity, but that the party proceeded against is to be adjudged to do a certain specific act; if it is to pay money, then to pay a specific sum of money”.
In Matter of Black (261 App Div 791), a sum of money was not paid as ordered by a clear and unambiguous decree. For such failure, the respondent was punished by contempt.
As the court stated in Matter of Black (supra, p 793), "The finding in the order to show cause * * * indicates that the learned surrogate was of the opinion that the respondent was guilty of a contempt of court. The surrogate made no finding that the respondent was either unable to pay or to endure imprisonment. Such a finding was necessary as a basis for the exercise of discretion. The avoidance of an unpleasant duty is no ground for the exercise of discretion”.
There are numerous case precedents in which contempt punishment has been invoked in situations similar to the case at bar. In Matter of Holmes (79 App Div 267) an executor was required to pay certain sums and the court stated (p 269): "The Surrogate’s Court properly made the order punishing the executor as for a contempt”.
It has likewise been held that payment of an inheritance tax can be enforced by contempt punishment. (See Matter of Curtis, 73 Hun 185, affd 142 NY 219.)
Warren’s Heaton (NY Surrogates Courts, vol 1A, § 119, par [b]) states that Matter of Isaacs (103 Misc 184) and Matter of Scheuer (161 App Div 525) hold that "[The] failure to make payment of amounts required to be paid under a decree in an accounting proceeding warrants punishment for contempt.”
Contempt punishment also applies whether the payments are to be made to legatees and distributees or to a creditor. See Matter of Dimou (149 Misc 83).
In the case at bar, the decree clearly instructed respondent to pay the specific sum owed to the United States Government within 20 days of the June 7, 1972 decree. He has failed to do so and will be punished by contempt for this inexcusable failure.
In order to punish the respondent for contempt, the petition *369 presented to the court must comply with the provisions set forth in SCPA 607. That is, one of the grounds prescribed in SCPA 606 must be shown. The petition here shows respondent to be an individual falling within the purview of SCPA 606 (subd 1, par [d]). "Where the delinquent is a fiduciary and the decree relates to the estate, in which case the court may enforce the decree or order as prescribed in this section, either with or without requiring the issuance of an execution, or after return of an execution, as it deems proper”.
The petitioner must also show that a certified copy of the decree or order sought to be enforced has been personally served upon the person against whom it was entered, which service shall be equivalent to personal demand upon the respondent for payment of the sum directed to be paid, or performance of the act directed to be paid, or order to be performed. However, where the delinquent is a fiduciary and the decree or order relates to the estate as is the case herein, the court may enforce the decree or order without service of such certified copy. This lack of a need to serve such certified copy reflects the stricter attitude of the courts toward legal representatives in an estate proceeding. As is the case herein, a higher degree of trust is required and must be exercised by an estate fiduciary.
In addition to showing the facts constituting the commission of the offense, that the decree has been entered, that the decree requires the payment of money or performance of some other act, and demand for performance, as well as a refusal or willful neglect to obey, all of which are requirements of SCPA 607, the court must also find that the offense committed was calculated to and did defeat, impair, impede or prejudice the rights or remedies of the party to the proceeding. This is an absolute requirement and the order is insufficient without such a finding. In the case at bar, the petition clearly shows that because of respondent’s refusal to comply, petitioner has been unable to enforce its claims. The inability to receive moneys owed to it has resulted in a loss of revenues to the Government and its citizens. Respondent’s conduct and offense did therefore defeat, impair, impede and prejudice the rights and remedies of the petitioner. Respondent has offered no evidence whatsoever to disprove petitioner’s contentions.
Where notice of the application is required, this may be given either by an order to show cause or by the issuance of a warrant of commitment. Under SCPA 607, the application to *370 punish for contempt may be commenced by service of an order to show cause either upon the respondent personally or upon his attorney. Here, the order to show cause was served personally. The order requires the respondent to show cause before the court or Surrogate, at a time and place therein specified, why he should not be punished for the alleged offense. Again, the order herein originally called for respondent to appear and answer on September 27, 1975, but respondent has been granted repeated adjournments and opportunities to come forward.
It should be noted that a court may, in its discretion, refuse to punish any person for contempt under SCPA 606 in a case where facts shown to the court’s satisfaction would justify a release of such person from imprisonment in accordance with section 776 of the Judiciary Law. The two criteria set forth in this section are inability to endure imprisonment and inability to pay. In the case at bar, there has been no showing that respondent is unable to pay the money judgment owed or to endure imprisonment. Even if respondent had presented facts to the court supporting his inability to pay, it would not be sufficient to prevent contempt punishment in this case.
Matter of Garrity (149 Misc 180) dealt with the question of whether or not the fiduciary can avoid punishment by claiming he or she no longer had the funds. In the Garrity case, an accounting representative sought to prevent punishment by claiming the money was not in his hands. The court rejected that argument and held (p 181) that "The entry of the decree from which no appeal has been taken, and the time to appeal from which has expired, conclusively demonstrate the possession by the executor of assets applicable to the payments directed”.
A decree is conclusive on the question of whether such funds are available. Such a decree was entered in the present proceeding. The decree of Acting Surrogate Schenck conclusively established that the funds were available and due and owing. Therefore, respondent cannot avoid punishment by claiming that these funds are no longer available. These sums of moneys should have been payable forthwith and by failing to do so, respondent is in contempt of court.
Matter of Garrity (supra) also held that an executor may be released from contempt punishment if he can show that his own misconduct did not contribute to the condition of the estate’s loss of moneys. However, in the case at bar, respon *371 dent has not shown that his own misconduct has not contributed to any loss of estate moneys. In fact, respondent’s own misconduct has resulted in numerous surcharges for his actions. As was stated in Matter of Collins (39 Misc 753), the fact that a person imprisoned for a civil contempt had been adjudicated a bankrupt, affords no reason why he should be discharged from imprisonment in a case where he has failed to comply with a Surrogate’s decree directing him to pay a sum of money representing his devastavit of an estate of which he had been an administrator.
Let us now proceed to the question as to what extent an inquiry must be made on an application for contempt. In Matter of Isaac (103 Misc 184) the question was discussed as to whether, upon the application to punish an administrator for contempt because of failure to comply with the decree of the court directing distribution of the estate of the deceased, the Surrogate should determine the validity and sufficiency of the reasons alleged for the failure of the administrator to comply with the terms of the existence of the jurisdictional facts and the compliance or noncompliance of the administrator with the provisions of the decree. The court in Isaac (p 187) cited Matter of Snyder (103 NY 178), which stated that: "The investigation before the surrogate might properly have been limited to the matter contained in it, i.e., the service of the decree and the facts of the neglect constituting the violation”.
It also cited Matter of Pye (18 App Div 306, affd 154 NY 773), which stated: "The motion to charge the appellant with contempt having been regularly conducted, presented for consideration the question only, whether the court had jurisdiction to make the order with which his disobedience was established in such manner as to subject him to that implication”.
As a result the Surrogate in Isaac decided that he may refuse to consider any questions upon the contempt application except the jurisdiction of the court to make the decree which directed distribution of the estate and the alleged failure of the administrator to comply with these provisions.
To hold respondent in contempt, all that is necessary is for the petition to set forth the required facts and proof. The court can then at once issue the warrant of commitment — ex parte. Usually, however, before a court will direct the commitment of a person, it requires notice of the application to be given to him and affords him an opportunity to be heard in *372 opposition. This court has given respondent such notice along with numerous and ample opportunities to be heard.
It must also be shown that the respondent has refused or willfully neglected to obey the order and the prayer for relief must ask that the respondent be directed to show cause why he should not be punished for contempt. Again, the petition herein has asked for such relief based upon respondent’s continued neglect and refusal to comply with the decree. In the only pleading submitted by respondent, it is alleged that there was no refusal or willful neglect. However, respondent makes no allegations as to what has caused his failure to comply. In fact, he does not even state that he will now comply with such decree. Respondent has totally avoided all opportunities to present to this court a scintilla of evidence or proof in opposition to petitioner’s request to hold him in contempt. This is a clear case where actions speak louder than words. Given the fact that the decree was entered in 1972 and that respondent has consistently avoided all attempts to comply whatsoever with the decree, this court finds that such actions clearly indicate a willful neglect which must be punishable by contempt.
Accordingly, this court orders that a warrant of commitment be issued against respondent and that such confinement shall continue until the sums ordered to be paid by respondent are paid.