Peter N. **BERTUCCI,** Plaintiff,

v.

Stanley **BROWN,** Pavia & Harcourt, a Partnership, Donald Siskind, Hon. Louis D. Laurino, Surrogate of Queens County, Hon. John J. Santucci, District Attorney, Queens County, John Marshall, Assistant District Attorney, Queens County, and Hon. William D. Friedman, a Justice of the Supreme Court of the State of New York, County of Queens, Defendants.

No. 85 CV 3363.

United States District Court, E.D. New York.

June 8, 1987.

Peter N. Bertucci, pro se.

Stroock & Stroock & Lavan by Diane Penneys Edelman, New York City, for defendant Brown.

D'Amato & Lynch by Anthony J. Briguglio, New York City, for defendants Pavia & Harcourt and Siskind.

Robert Abrams, Atty. Gen., State of N.Y. by Peter A. Durfee, Asst. Atty. Gen., New York City, for defendants Laurino and Friedman.

Peter L. Zimroth, Corp. Counsel, City of New York by Allen Burns, Asst. Corp. Counsel, New York City, for defendants Santucci and Marshall.

PLATT, District Judge.

This civil rights action under 42 U.S.C. § 1983 grew out of events following plaintiff's handling of an estate, the principal beneficiary of which is one of the defendants. In essence, Peter Bertucci, *pro se*, alleges a conspiracy among two State court judges, two prosecuting attorneys, a law firm and one of its associates, and a private individual to deprive him of his civil rights by forcing him to testify in violation of his rights under the Fifth Amendment to the Constitution. Defendants have moved to dismiss the action for failure to state a claim upon which relief may be granted and for failure to plead with adequate specificity. For the purpose of deciding defendants' motions, we take the allegations in the complaint as true and will dismiss the complaint only if it is clear "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conway v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Although *pro se* complaints are held to less exacting standards than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff was a former attorney and is therefore not entitled to the considerations accorded a typical *pro se* plaintiff.

## I. FACTS

The complaint is thin on specific facts. For the sake of clarity, therefore, we augment the discussion with the undisputed facts admitted in defendants' papers.

On November 24, 1981, plaintiff was appointed executor of the estate of Julia Tenebra, the aunt of defendant Stanley Brown. Brown was the residuary legatee and principal beneficiary under Mrs. Tenebra's will. On April 16, 1982, plaintiff was convicted in Nassau County on two counts of grand larceny for matters unrelated to the Tenebra estate. He was subsequently disbarred. *Matter of Peter N. Bertucci*, 88

A.D.2d 326, 453 N.Y.S.2d 191 (N.Y.App. Div.1982).

Upon learning of Bertucci's conviction, Brown retained the defendant law firm of Pavia & Harcourt, with which defendant Siskind is associated. Brown, by his attorneys, petitioned the Surrogate's Court of Queens County to revoke Bertucci's letters testamentary. On May 19, 1982, defendant Surrogate Laurino granted Brown's petition and ordered Bertucci to render an accounting.

Brown subsequently learned that Bertucci had diverted significant funds from the Tenebra estate and therefore initiated criminal proceedings against Bertucci with the Queens County District Attorney. Bertucci was indicted for misappropriation of funds on March 25, 1983, and arrested on April 15, 1983. At Bertucci's arraignment on the criminal charges, Siskind served Bertucci with Surrogate Laurino's order to account. Bertucci was released on his own recognizance.

On August 16, 1983, after the period allowed to Bertucci to render an accounting had lapsed, and while the criminal indictment was pending, Brown sought and Surrogate Laurino issued an order to show cause why Bertucci should not be held in contempt for failing to render an accounting pursuant to the May 1982 order. On September 21, 1983, Surrogate Laurino received a letter from Bertucci in which Bertucci objected to the order on the ground that the order to render an accounting violated his Fifth Amendment privilege against self-incrimination. When Bertucci failed to appear on the return date, Surrogate Laurino held Bertucci in contempt and ordered the issuance of a warrant of commitment.

On November 17, 1983, Bertucci found himself before Justice Brennan (who is not a defendant here) of the Queens County Supreme Court in connection with the pending criminal case. When Justice Brennan adjourned the case to December so that Bertucci could obtain counsel, defendant Assistant District Attorney ("ADA") John Marshall informed the Justice of the outstanding warrant for Bertucci's arrest in connection with the civil contempt. ADA Marshall indicated that Siskind and two marshals had been in the courtroom earlier. Thereupon, Justice Brennan remanded Bertucci to custody rather than releasing him on his own recognizance. Bertucci's sister posted bail on December 23, 1983. Bertucci's complaint also refers to criminal appearances on August 17 and September 15, 1983, the details of which are not clear, at which Siskind was also allegedly present.

Bertucci finally appeared before Surrogate Laurino on December 27, 1983, seventeen months after first being ordered to provide an accounting. Surrogate Laurino rejected Bertucci's Fifth Amendment claim and ordered Bertucci incarcerated. In February 1984, Bertucci unsuccessfully sought a State writ of habeas corpus. On October 26, 1984, United States District Judge Whitman Knapp granted Bertucci relief on his federal habeas corpus petition, on the ground that compelling Bertucci to render an accounting while there were pending criminal charges relating to the misuse of estate funds violated Bertucci's Fifth Amendment right against self-incrimination. *Bertucci v. Cunningham*, 84 Civ. 4460 (S.D.N.Y. Nov. 16, 1984) [Available on WESTLAW, DCT database].

In June 1985, Bertucci was convicted by a jury on the criminal charges in New York Supreme Court. Bertucci alleges that defendant Justice Friedman, the presiding Justice, committed various improper acts during the trial and subsequent sentencing. (Bertucci also accuses Justice Ralph Sherman of conspiring with the defendants to deny Bertucci's pretrial motions, although Justice Sherman is not a defendant here. Complaint ¶¶ 43, 44.) On August 15, 1985, Justice Friedman sentenced Bertucci to two to six years incarceration and ordered him to make restitution within six months. Justice Friedman indicated that he might resentence Bertucci following a hearing on compliance with the restitution order. At the sentencing, Bertucci was served with an order signed by Surrogate Laurino requiring Bertucci to show cause why he should not be held in contempt for failing

to obey the September 23, 1983, order to render an accounting.

On September 3, 1985, on motion of Brown, Surrogate Laurino again held Bertucci in contempt for failure to file an accounting. Surrogate Laurino also ordered issuance of a warrant of commitment, which apparently was never served on Bertucci. In fact, Bertucci first learned of the warrant from the papers filed in this case.

In April 1986, Bertucci came before Justice Friedman again for a hearing to determine whether he had complied with the restitution order. Siskind, now the attorney for the executor of the Tenebra estate, testified to matters indicating that restitution had not been made. Justice Friedman thereupon resentenced Bertucci to two and one-third to seven years, the maximum sentence available. In a letter to this Court dated April 26, 1986, which is not properly part of the complaint, Bertucci alleged various additional improprieties on the part of Justice Friedman at the hearing.

## II. THE COMPLAINT

Bertucci alleges three causes of action in his civil rights complaint, the details of which, such as they are, will be discussed more fully below. The first cause of action alleges that all the defendants except Justice Friedman conspired to violate his Fifth Amendment privilege against self-incrimination by incarcerating him for failing to render an accounting while criminal charges relating to his handling of the estate were pending. The apparent goal of this conspiracy was to strengthen the criminal case, on the one hand, and to force resolution of the civil matter, on the other. Complaint ¶¶ 29, 36, 37. Bertucci seeks $10 million in compensatory and $25 million in punitive damages.

Bertucci's second cause of action alleges that Justice Friedman entered into the conspiracy with the others and manipulated the criminal proceedings and sentencing to force Bertucci into making restitution to Brown. *Id.* ¶¶ 46–53. Bertucci seeks $10 million in compensatory and $25 million in punitive damages.

In his final cause of action, Bertucci seeks a declaratory judgment that Surrogate Laurino's most recent contempt order violates his civil rights and an order enjoining enforcement of any contempt order based on Surrogate Laurino's original order to render an accounting. *Id.* ¶¶ 54–60.

## III. DISCUSSION

For ease of discussion, this opinion will address Bertucci's damage claims first and then his claim for equitable relief. The discussion may also be divided conveniently according to the common arguments of the defendants.

### A. The Judicial Officers

Bertucci alleges that Surrogate Laurino intentionally incarcerated him in excess of the Surrogate's statutory authority, Complaint ¶¶ 27–28, and that Surrogate Laurino improperly sought the input of Siskind, Brown's attorney, in connection with his motions and habeas corpus petition, *id.* ¶ 34. Bertucci alleges that Justice Friedman engaged in various improper acts during the criminal trial, including interrupting Bertucci's testimony with his own objections, limiting Bertucci's testimony and the defenses Bertucci was permitted to assert, improperly charging the jury, making inappropriate faces and comments during the trial, commenting on the weight of the evidence, improperly setting bail in an attempt to force Bertucci to pay Brown, making inappropriate comments at the sentencing, and incarcerating Bertucci in the face of a presentence report recommending against incarceration. *Id.* ¶¶ 47–51.

Justice Friedman and Surrogate Laurino have moved to dismiss the complaint under Rule 12(b)(6), Fed.R.Civ.P., asserting judicial immunity. The doctrine of judicial immunity protects a judge from monetary liability for actions taken in his judicial capacity except when he acts in a clear absence of all jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978). This rule requires a two-part inquiry, to determine first whether the judge acted with

jurisdiction over the subject matter, and second whether the act complained of was a "judicial" act, *i.e.*, one normally performed by a judge and to the expectations of the parties. *Id.* at 356–62, 98 S.Ct. at 1104–08.

■ Bertucci does not challenge Surrogate Laurino's subject matter jurisdiction over the Tenebra estate. Instead, he argues that Surrogate Laurino acted as a criminal court judge, beyond his statutory authority and "in a clear absence of all jurisdiction," when he ordered Bertucci incarcerated for disobeying the order to account. Complaint ¶ 28. The New York Surrogate's Court Procedure Act makes it clear, however, that a surrogate may incarcerate a fiduciary for failing to obey a court order. N.Y.Surr.Ct.Proc. Act § 606(1)(d). *See, e.g., In re Estate of Kahr*, 85 Misc.2d 363, 379 N.Y.S.2d 638 (N.Y.Surr.Ct.1976). Holding a party in contempt for failing to obey a court order is plainly a "judicial" act. Surrogate Laurino, therefore, acted entirely within his jurisdiction when he incarcerated Bertucci for failing to obey the order to render an accounting. Surrogate Laurino also acted entirely within his jurisdiction when he solicited input from Siskind. As the party who sought the original order to account, Brown had a legitimate interest in the enforcement of that order and was therefore a proper party to respond, by his attorney, to Bertucci's motions and petition. It was entirely proper, perhaps mandatory, for Surrogate Laurino to solicit Siskind's input.

■ Justice Friedman acted entirely within his jurisdiction also. First, Bertucci does not challenge Justice Friedman's subject matter jurisdiction over the criminal action. Second, the acts in which Justice Friedman allegedly engaged, stripped of allegations of impropriety, are clearly of the kind normally performed by a judge to the expectations of the parties in the course of a trial.

Bertucci's allegations that Justice Friedman and Surrogate Laurino conspired with the other defendants does not lift the bar of judicial immunity. First, conclusory allegations of conspiracy are insufficient to state a civil rights claim. *Ostrer v. Aronwald*, 567 F.2d 551, 552 (2d Cir.1977). Bertucci has failed to plead sufficient facts to show the existence of a conspiracy involving Justice Friedman or Surrogate Laurino. Second, even if Bertucci had made specific allegations showing a conspiracy, judicial immunity survives "regardless of allegations of corruption or maliciousness." *Kane v. Yung Won Han*, 550 F.Supp. 120, 122 (E.D.N.Y.1982) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). Accordingly, because Bertucci has alleged no conduct outside the scope of judicial immunity, his claims against Justice Friedman and Surrogate Laurino must be dismissed.

### B. *The Prosecutors*

Bertucci alleges that District Attorney Santucci and Assistant District Attorney Marshall conspired with the other defendants to force him to incriminate himself. Apart from broad accusations of conspiracy, Bertucci alleges only four specific acts on the part of Santucci or Marshall. First, Marshall advised Justice Brennan that an arrest warrant for Bertucci was outstanding. Complaint ¶ 22. Second, Marshall and Santucci reported the progress of the criminal case to Siskind, thereby facilitating service of civil process. *Id.* ¶ 37. Third, Marshall was "responsible" for the presence of Siskind at several of the criminal proceedings. *Id.* ¶ 38. Fourth, Siskind and Marshall argued against Bertucci's habeas corpus petition. *Id.* ¶¶ 33, 40.

Santucci and Marshall assert absolute immunity as a basis for their motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., arguing that all of the alleged conduct occurred within the judicial system and was taken to advance existing or pending prosecutions. They also assert that the complaint lacks the requisite degree of specificity to allege a conspiracy to violate civil rights.

■ A prosecutor is entitled to absolute immunity from damage actions under 42 U.S.C. § 1983 arising from conduct in initiating a prosecution and presenting the

State's case. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). He is entitled only to a qualified, "good faith" immunity when he acts in an investigative or administrative capacity, however. *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981). Thus, courts have attempted to "slice" the prosecutor's job into different functions to determine when a prosecutor is entitled to absolute immunity. *See, e.g., Powers v. Coe*, 728 F.2d 97, 103–07 (2d Cir.1984). Bertucci argues that Santucci's and Marshall's attempt to force him to incriminate himself is "investigatory" because it involved the gathering of evidence and that accordingly they are entitled only to a qualified immunity requiring that they acted in good faith.

The purpose of prosecutorial immunity, as with judicial immunity, is to protect the judicial system. Subjecting prosecutors to potential liability for prosecutorial conduct would undermine the performance of their duties and, in turn, the criminal justice system. *Imbler*, 424 U.S. at 424, 96 S.Ct. at 992. Prosecutorial and investigatory functions are often closely related, however, and prosecutorial functions do not stop at the courtroom door. "Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Id.* at 431 n. 33, 96 S.Ct. at 995 n. 33. Therefore, the courts take a functional approach by examining the conduct rather than the actor.

■ The Court holds that Santucci and Marshall are entitled to absolute immunity for all of the conduct alleged. First, opposing a prisoner's habeas corpus petition is clearly a central function of a District Attorney's office. Subjecting a District Attorney, or his assistant, to civil liability for his presentation of the State's case in a habeas corpus proceeding would paralyze the criminal justice system. Furthermore, when Marshall advised Justice Brennan that a warrant for Bertucci's arrest was outstanding, he was acting in his capacity as an officer of the court aiding in enforcing a court order. Indeed, this Court believes that Marshall had an obligation to inform Justice Brennan of the warrant. Similarly, when Marshall allegedly informed Siskind of the status and dates of the criminal proceedings, he was acting to aid in the enforcement of Surrogate Laurino's apparently valid order to account. A contempt proceeding, whether criminal or civil, for failing to obey a court order is a method of maintaining the integrity of the judicial system. *See Juidice v. Vail*, 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977) (contempt proceeding is the process "through which [the State] vindicates the regular operation of its judicial system"). Subjecting prosecutors to civil liability for aiding in the enforcement of a court order, even one subsequently determined to violate a plaintiff's civil rights, would significantly hamper the administration of justice.

Although not directly on point, the recent case of *Barr v. Abrams*, 810 F.2d 358 (2d Cir.1987), is instructive. In that case, the Attorney General had obtained an order requiring Barr to appear for an examination under oath and to produce documents. Barr invoked his Fifth Amendment privilege and refused to answer any questions or produce documents. The Attorney General filed a criminal information charging Barr with criminal contempt for failing to obey the order. Ultimately, a judge dismissed the information on the ground that Barr had a valid Fifth Amendment privilege.

In the present case, of course, the prosecutors did not file a criminal information charging Bertucci with contempt; they are alleged to have assisted a private individual in the prosecution of Bertucci for civil contempt. This Court sees no reason, however, why the result should be any different when the prosecutors attempt to assist enforcement of a court order by assisting in a civil prosecution rather than initiating a criminal prosecution.

Accordingly, since Bertucci has failed to allege any conduct outside the scope of Santucci's and Marshall's prosecutorial functions, his claims against them must be dismissed.

## C. *The Private Parties*

Bertucci alleges that Brown, Pavia & Harcourt, and Siskind conspired with the judges and prosecutors to compel Bertucci to render an accounting in violation of his Fifth Amendment right against compelled self-incrimination. Brown, Pavia & Harcourt, and Siskind assert that they cannot be liable under 42 U.S.C. § 1983 because they are not State actors and the complaint does not adequately allege a conspiracy with State actors.

■ To be liable under section 1983, a defendant must have acted under color of State law. *Lugar v. Edmondson Oil*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). Ordinarily, absent a challenge to the procedure itself, a private person who misuses State civil contempt proceedings is not subject to section 1983 liability. *Dahlberg v. Becker*, 748 F.2d 85 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) (private party's misuse of New York's contempt law to obtain maintenance arrearages required by default divorce decree did not constitute State action for purposes of 42 U.S.C. § 1983). A private party is, however, subject to liability under section 1983 if he conspires with or willfully engages in joint activity with an agent of the State, *Addickes v. H.S. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970), even if the State agent is immune from section 1983 liability. *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183 (1980).

To allege adequately a conspiracy to violate section 1983, a plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137 (2d Cir.1964). Vague and conclusory allegations of conspiracy are insufficient. *Ostrer v. Aronwald*, 567 F.2d 551, 552 (2d Cir.1977).

Apart from broad allegations of conspiracy, Count I of the complaint contains no allegations of conduct on the part of Brown and only four allegations of conduct connecting Siskind with State actors. Siskind was present at Bertucci's arrest on the criminal indictment. Complaint ¶ 38. ADA Marshall reported "every move" in the criminal matter to Siskind. *Id.* ¶ 37. ADA Marshall was "responsible" for Siskind's presence in the courtroom during various of the criminal proceedings. *Id.* ¶ 38. Surrogate Laurino submitted Bertucci's habeas corpus papers to Siskind for his input "for the purpose of continuing [Bertucci's] wrongful incarceration." *Id.* ¶ 34.

All of the conduct alleged in Count I occurred in the normal course of Brown's criminal and civil actions against Bertucci. As the complainant in the criminal case, Brown was perfectly entitled to be advised, through Siskind, his attorney, of the progress of the action and to have his lawyer present at the proceedings. General allegations of cooperation between private defendants and specified State actors do not make out a claim of action under color of State law. *Singer v. Bell*, 613 F.Supp. 198, 202 (S.D.N.Y.1985). Since Brown was a beneficiary of the estate of which Bertucci had been executor and therefore had an interest in requiring Bertucci to render an accounting, Brown was a proper party to respond to Bertucci's habeas corpus claim in an effort to protect the validity of the contempt order.

Resorting to State court is not ordinarily sufficient to subject one to section 1983 liability. Conspiracy with a State actor, if adequately alleged, supplies the necessary element of State action in such a case. Accusations of conspiracy are easily made and highly disruptive, however. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981). The few specific allegations in Count I describe conduct that is a normal part of resorting to State court, and permitting those allegations to support an inference of conspiracy with State actors would subject every claim of false imprisonment or malicious prosecution to federal jurisdiction under section 1983. *Cf. San Filippo v. United States Trust Co.*, 737 F.2d 246, 256 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 747 (1985) (If mere allegations of events that are routine and necessary in the preparation of grand jury evidence

were sufficient to support an inference of conspiracy between prosecutors and witnesses, then every grand jury witness "could face the burden of defending a costly civil suit charging 'conspiracy' to give false testimony.").

■ Accordingly, the Court finds the allegations in Count I insufficient to raise an inference of conspiracy between the private parties and State actors. *See Shaffer v. Cook,* 634 F.2d 1259, 1260 (10th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981) ("Nothing in the complaint indicates that the court or the attorneys were acting outside the confines of the neutral function of a judicial forum.").

Count II of the complaint contains no factual allegations connecting any of the private parties with any of the State actors. In fact, Count II is merely a catalogue of alleged misdeeds on the part of Justice Friedman and, apart from conclusory allegations that the defendants "acted in concert," there is absolutely nothing to connect Justice Friedman to *any* of the other defendants. An affidavit Bertucci submitted in opposition to the defendants' motions alleges that two meetings took place between the private parties and Justice Friedman. Those allegations are vague and conclusory, however. Bertucci does not allege even an approximate time and place of the meetings, nor does he state any basis for his knowledge of the meetings. Accordingly, Count II is also insufficiently pleaded.

Because Bertucci has failed to allege adequately a conspiracy between the private defendants and any State actors, Bertucci's claims against Brown, Pavia & Harcourt, and Siskind must be dismissed.

### D. *Equitable Relief*

■ In his third cause of action, Bertucci requests declaratory and injunctive relief to prevent enforcement of any contempt order issued in conjunction with his failure to render an accounting. He alleges that on August 15, 1985, at his criminal sentencing, he was served with an order signed by Surrogate Laurino requiring him to show cause why he should not be held "still in contempt" for failing to obey Surrogate Laurino's September 1983 order. Complaint ¶ 55. Bertucci argues that Judge Whitman Knapp's order in the habeas corpus case invalidated the order to account. *Id.* ¶ 56. The Court concludes, however, that Bertucci is not entitled to the relief requested, both for reasons of comity and under the traditional principles of equity.

In *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Supreme Court held that federal courts should abstain from enjoining State contempt proceedings if the State procedures provide the federal plaintiff with an opportunity to present his federal claims to the State court. Because "[t]he contempt power lies at the core of the administration of a State's judicial system," federal interference with a contempt proceeding is as offensive to the State as interfering with a pending State criminal action. *Id.* at 334–36, 97 S.Ct. at 1216–18.

State law plainly supplies avenues by which Bertucci may present his federal claims to State court. For example, he may make a motion to vacate the contempt order, N.Y.Civ.Prac.L. & R. § 5015, or a motion for stay of the warrant of commitment, *id.* § 2201. *See Juidice,* 430 U.S. at 337 n. 14, 97 S.Ct. at 1218 n. 14 (noting availability of motions to vacate and for a stay under New York civil practice rules).

Abstention is not appropriate, however, if the plaintiff alleges and proves that the State officials enforced the contempt procedures in bad faith or were motivated by a desire to harass. *Juidice,* 430 U.S. at 338, 97 S.Ct. at 1218. As discussed above, however, Bertucci's allegations of conspiracy are insufficient to state a cause of action under 42 U.S.C. § 1983, and the Court finds that they are equally insufficient to avoid abstention under *Juidice.* A contrary conclusion based on the present complaint would totally undermine the abstention doctrine. Accordingly, abstention is appropriate in this case.

The Court also finds, however, that Bertucci has failed to show that he would be entitled to the relief sought. To obtain an

injunction in the ordinary case, the plaintiff must show a threat of irreparable injury for which there is no adequate remedy at law. *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1974). Because of considerations of comity and federalism, however, a heightened standard requires a plaintiff seeking to enjoin State officers engaged in the administration of State criminal laws to show a threat of great and immediate irreparable injury. *Id.* The Court believes that the same considerations should apply to enjoining civil contempt proceedings as to enjoining criminal proceedings. *Cf. Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Bertucci fails, however, even under the lower standard applicable to ordinary cases.

First, although he alleges that he has been served with an order to show cause, Complaint ¶ 55, he does not allege that he has been served with a warrant of detainer. Therefore, Bertucci has failed to allege any immediate threat. Second, Bertucci is currently incarcerated on his criminal conviction. He has failed to allege how being held in contempt would harm him any further. Finally, if he were to be held in contempt, he could present his federal claims to the State court in several ways, as discussed above, and thus, he has an adequate remedy at law.

Finally, the Court disagrees with Bertucci's assertion that Judge Knapp's decision in the habeas corpus case invalidated the underlying contempt order. Judge Knapp merely concluded that it was improper to incarcerate Bertucci at a particular time in light of the then-pending criminal trial, which has now concluded.

## IV. CONCLUSION

For the reasons above, Bertucci has failed to state a claim against any of the defendants and the complaint must therefore be dismissed. Ordinarily, the Court would grant a plaintiff leave to replead. Bertucci, however, has already submitted an affidavit that purports to allege sufficient facts to defeat the motion of Pavia & Harcourt and Siskind, as well as letters to the Court alleging various additional misdeeds on the part of the defendants. In fact, the affidavit merely repeats some of the allegations of the complaint and asserts a conspiracy in as conclusory fashion as the complaint does. The letters are equally insufficient. Bertucci was an attorney and should know the requirements for pleading a civil rights complaint. Under the circumstances, the Court believes that the plaintiff has "shot his bolt" and already pleaded all the facts there are. Because those facts do not provide any basis for relief, dismissal with prejudice is appropriate. *See Singer v. Bell*, 613 F.Supp. 198, 205 (S.D.N.Y.1985).

Accordingly, the entire complaint must be, and hereby is, dismissed, with prejudice, as to all defendants.

SO ORDERED.