Frederick B. LAVERPOOL, Sr., Gina Marsh, Ella Hill, Andrew Wilder, Percy Jackson, Jane Best–Simpson, John Doe, and Jane Doe, On Behalf of themselves and all others similarly situated, Plaintiffs,

v.

**NEW YORK CITY TRANSIT AUTHORITY, et al.,**
Defendants.

No. CV–90–2327 (ADS).

United States District Court,
E.D. New York.

March 30, 1991.

C. Vernon Mason, New York City, for plaintiffs.

Albert C. Cosenza, Gen. Counsel, by Evelyn Jonas, Asst. Gen. Counsel, Brooklyn, N.Y., for defendant New York City Transit Authority.

### OPINION AND ORDER

SPATT, District Judge.

The plaintiffs, all former employees of the New York City Transit Authority ("TA"), challenge the TA's drug testing requirements, methodology and policy, and also its disciplinary procedures as discriminatorily directed against minorities. The Amended Complaint alleges six causes of action throughout this sixty-nine page pleading with 323 numbered paragraphs, and the plaintiffs refer to alleged violations of the Civil Rights Act, 42 U.S.C. §§ 1981, 1983 and 1985; Title VII, 42 U.S.C. § 2000e–5; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and New York's Public Authorities Law § 1210 and Civil Service Law § 75.

The defendants move to dismiss the Amended Complaint on the grounds that the complaint fails to state a claim for which relief may be granted, and that certain claims are barred by the applicable statutes of limitation. The defendants also move to strike all redundant, scandalous, impertinent and immaterial matter from the Amended Complaint.

Although the plaintiffs have not filed any opposition to this motion, certain of the plaintiffs cross-move to withdraw as named plaintiffs in this action.

### I. FACTUAL BACKGROUND

The facts set forth below have been gleaned from the Amended Complaint, which are deemed true for purposes of this motion to dismiss (*see Branum v. Clark*, 927 F.2d 698, 704 [2d Cir.1991]; *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 14 [2d Cir.1989], *cert. denied*, —— U.S. ——, 110 S.Ct. 723, 107 L.Ed.2d 743 [1990]). Additionally, the Court draws all reasonable inferences favorably toward the plaintiff (*see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974]).

The Court notes that the Amended Complaint purports that this is a class action, although no motion has been made, nor has the Court ordered the required certification (*see* Fed.R.Civ.P. 23).

Although the Amended Complaint is replete with redundant and prolix allegations, the basic material allegations are summarized as follows:

*General Allegations:*

The plaintiffs, all former employees of the TA [1], were either suspended, disciplined and/or discharged from employment with the TA allegedly due to testing positive for use of controlled substances from the period of September 1984 through November 1989.

The plaintiffs allege that the defendants' Policy Instruction 6.0.2, which allegedly requires employees to submit to drug screening at a "back-to-work" physical after an extended illness, does not define any level of suspicion necessary to serve as a predicate for ordering such a test. According to the plaintiffs, this merely "acts as a subterfuge to counteract an unreasonable search and seizure" (Amended Complaint ¶ 14).

---

**1.** The Amended Complaint is also allegedly brought on behalf of "all those similarly situated".

According to the plaintiffs, the defendants knowingly, intentionally and maliciously disciplined and discharged the plaintiffs and other minorities similarly situated by utilizing "a known unreliable and inaccurate controlled substance testing procedure" (Amended Complaint ¶ 16). The defendants were also allegedly notified and aware of inconsistencies and defective procedures used by Compu-chem laboratory, the testing facility utilized by the defendants. Despite such notice, the defendants allegedly continue to utilize the laboratory, and continue to deny the plaintiffs equal terms and conditions of employment in violation of 42 U.S.C. § 1981.

The plaintiffs also allege that the defendants are an "enterprise" within the meaning of RICO, "whose contractual business relationship between its contract laboratory Compu-chem, resulted in their activities being directed toward attaining a single goal of establishing a related and continuing activity of knowingly using inaccurate and unreliable urinalysis testing" (Amended Complaint ¶ 19). In furtherance of this scheme, the defendants are alleged to have attempted to bribe public officials in order to obtain the necessary certificate of license for Compu-chem to operate.

*Specific or Particularized Allegations:*

The plaintiffs allege that the TA maintains a policy of screening all applicants for TA jobs for drug use, including marijuana use, while failing to recognize the shortfalls or inaccuracies of such testing. Since approximately 1984, all applicants for TA employment have been and presently are allegedly required to submit urine samples for drug analysis as part of a pre-employment screening process.

The plaintiffs allege that the screening is not done uniformly, rather it is done with "invidious motivation and intent of depleting its minority work force" (Amended Complaint ¶ 109). Furthermore, the accuracy and reliability of the testing is not ensured, which effectively denies minorities (blacks) equal terms and conditions of employment, such as by failing to conduct blind quality assurance tests. As a result, many job applicants and employees are "falsely labelled drug users and inappropriately disciplined and/or denied job promotions and other terms and conditions and benefits of employment" (Amended Complaint ¶ 112).

The plaintiffs also allege that testing employees with "non-safety sensitive" jobs for such positions violates the Fourth and Fourteenth Amendments to the United States Constitution, as well as Articles One and Twelve of the New York Constitution.

The plaintiffs further allege that the defendants instituted a "counter intelligence" program through the use of friends, associates, relatives, contractors and vendors for the purpose of preventing the hiring, promotion and conferral of employment benefits upon the TA's minority work force, and that the defendants have also established a "minority hit list". The "minority hit list" allegedly consists of employees, including the plaintiffs, who oppose the defendants' allegedly discriminatory policies, including the drug testing policy.

According to the plaintiffs, "similarly situated white employees of Defendants were hired, given promotions, retained and treated differently in all employment matters" (Amended Complaint ¶ 129). The plaintiffs also aver that the defendants have and continue to act in an arbitrary and capricious manner toward minorities, but do not act similarly toward the TA's white employees.

The following allegations pertain to each of the named plaintiffs.

*Plaintiff Laverpool:*

The plaintiff Frederick B. Laverpool ("Laverpool") served as Union President for approximately eight years, during which time "there existed an extreme history of hostilities and malicious union animus by Defendant TA against Plaintiff" (Amended Complaint ¶ 142). In May 1987, Laverpool began investigating and questioning the alleged irregularities and inconsistencies of the defendants' drug testing policy and related discriminatory practices.

Laverpool was later absent from work for an extended period of time for treatment relating to heart disease. Upon his

return to work in May 1988, Laverpool was required to undergo a physical examination which included a mandatory urinalysis, without any reasonable suspicion of illegal drug use. On May 11, 1988, Laverpool was suspended pending dismissal as a result of testing positive for illegal drug use.

On November 15, 1988, an arbitration hearing was held, at which time Arbitrator Simmelkjaer rendered a decision adverse to Laverpool, recommending Laverpool's dismissal. Laverpool alleges that Arbitrator Simmelkjaer was part of the defendants' "counter intelligence" policy, insofar as the defendants allegedly offered Arbitrator Simmelkjaer a bribe in the form of a part-time position with the TA for $80,000 per annum. Accordingly, Laverpool alleges that his due process rights were violated on the ground that he did not receive a fair and impartial arbitration hearing. Laverpool further alleges that he was "targeted due to his race and opposition to improper practices by the defendants" (Amended Complaint ¶ 152).

*Plaintiff Best–Simpson:*

The plaintiff Jane Best–Simpson alleges violation of Title VII insofar as the terms and conditions of her employment contract are "unequal" with others similarly situated, reflecting discrimination on the basis of her race and sex, and also in retaliation for her reporting the alleged improper employment practices of the defendants.

*Plaintiff Marsh:*

Plaintiff Gina Marsh ("Marsh") began employment with the TA as an undercover TA Police Officer in January 1983 which, the plaintiffs admit, is a "safety sensitive job" (Amended Complaint ¶ 155–56). After being hospitalized for multiple injuries sustained in a motor vehicle accident in January 1988, on February 18, 1988, Marsh was directed to submit to a mandatory drug urinalysis test during the course of a "back-to-work" physical.

Marsh's urinalysis tested positive for drug use, which resulted in her suspension by the TA. Marsh was later advised by the TA that she was no longer suspended since her urine specimen was allegedly improperly received and not in its original container.

She was reinstated, but the charges were allegedly never discontinued by the TA.

Marsh alleges that she was then forced to submit to a second urinalysis to test for drug use, which sampling was tested by an independent laboratory. The test was reported to be positive for illegal drug use. On November 9, 1988, an administrative hearing was held, allegedly without Marsh or her attorney present, which resulted in a recommendation to terminate Marsh's employment. On April 12, 1989, Marsh was discharged by the TA based on the administrative recommendation.

Marsh alleges that she was targeted due to her race, sex and opposition to improper employment practices, and was made a victim to the defendants' "counter intelligence" policy.

*Plaintiff Hill:*

Plaintiff Ella Hill ("Hill") was employed by the office of the Inspector General of the TA as a Paralegal/Legal Assistant. After several intra-office job transfers at the TA, Hill was ultimately assigned to the TA's drug testing and confirmation unit where she participated in the disciplinary process.

During the time of her employment, Hill became aware of various alleged improprieties with regard to the drug testing procedures, such as misplaced samples, abnormally high reporting and incorrect testing. Along with a TA co-worker, she reported these improprieties to a local newspaper. She also discussed this with a member of the defendant Metropolitan Transportation Authority Board, and filed a complaint with the Equal Employment Opportunity Commission and the New York State Division of Human Rights.

Hill alleges that she was generally denied promotions, salary raises, employment benefits, transfers, and was retaliated against due to her opposition to allegedly improper employment practices, including the defendants' drug testing policy. Hill also alleges that she was retaliated against and/or terminated due to her race, sex, disability and/or national origin in violation of Title VII.

*Plaintiff Wilder:*

Plaintiff Andrew Wilder ("Wilder") was a train conductor with the TA. The plaintiffs concede that the position of train conductor is considered a "safety sensitive" job. Wilder alleges that he was dismissed from the TA solely on the basis of the TA's drug testing policy and unreliable and inaccurate urinalysis procedure.

While performing his assigned duties as a train conductor, on June 25, 1987 Wilder allegedly became involved in a "passenger-train incident". Following this incident, Wilder was directed to undergo a drug urinalysis test pursuant to the defendants' policy of requiring urinalysis for all train employees after the occurrence of such an incident. Wilder alleges that the train-operator who was involved in this incident was a white male, but was not ordered to submit to a drug urinalysis.

Wilder tested positive for a controlled substance, but apparently received no disciplinary action from the TA for the alleged violation of the defendants' drug testing policy and procedure.

In January 1988, while assigned to "non safety-sensitive" duty as a mail clerk, plaintiff Wilder was ordered "without a scintilla of bare reasonableness or individualized suspicion of illegal substance drug use to submit to a drug urinalysis test". Wilder was notified that the urinalysis test was positive for a controlled substance. On January 18, 1988, Wilder was dismissed pending appeal during a disciplinary proceeding which is still pending.

Wilder alleges that he has been denied due process of law by being dismissed without first having been given the procedural benefits afforded under the Public Authorities Law § 1210, or the Civil Service Law § 75. He also claims that he has been denied and deprived of his property interest in his tenured civil service position, without due process of law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

*Plaintiff Jackson:*

Plaintiff Percy Jackson ("Jackson"), began employment with the defendant in the capacity of Bus Operator in September 1978. On or about March 25, 1988, during a required annual physical examination, Jackson was ordered to submit to a drug urinalysis pursuant to the defendants' policy. Jackson was informed that his urinalysis test was positive for a controlled drug use. He was suspended for allegedly violating defendants' Policy Instruction 6.0.2.

Jackson returned to work in September 1988 and, pursuant to the defendants' policy of retesting employees who had previously tested drug positive, he was ordered to resubmit to a urinalysis in October 1988. Plaintiff Jackson again tested positive for an illegal controlled substance pursuant to the defendants' policy. As a result, Jackson was dismissed. He contends that he was dismissed from the defendant TA solely on the basis of the defendant TA's drug testing policy and unreliable and inaccurate urinalysis procedures.

After requesting a confirmation test for the October 1988 urinalysis, Jackson was informed that his confirmation specimen did not bear his affixed signature or initials, which was allegedly affixed by the plaintiff at the time of the taking of his original specimen. Jackson also alleges that a disciplinary hearing was held in his absence and, to date, a decision has not been rendered.

Jackson further alleges that the defendants willfully and intentionally conspired to fraudulently award Compu-chem the drug urinalysis contract in 1987. Jackson also alleges that the defendants willfully and intentionally failed to comply with federal law, the federal Health and Human Services guidelines, and the Department of Transportation guidelines, all of which Jackson contends require proficiency testing. Additionally, Jackson alleges that the defendants maliciously and deliberately conspired to deplete the numbers of minority workers in its work-force through the use of unreliable and inaccurate drug urinalysis testing. This was in furtherance of

the defendants' "counter intelligence" policy.

*Alleged Violations:*

Although not specifically set forth as separate causes of action in the Amended Complaint, all of the plaintiffs allege the following violations of law:

By refusing to hire, promote and by disciplining and terminating the plaintiffs pursuant to the defendants' drug testing policy and urinalysis procedure, the defendants have and continue to deny employment and employment benefits to otherwise qualified individuals "solely because defendants regard them as handicapped, *i.e.*, drug abusers, in violation of plaintiffs' rights under the nondiscrimination provisions of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 706(7), 794" (Amended Complaint ¶ 300).

In addition, the defendants are allegedly screening out these "handicapped persons" without determining those applicants' individual abilities to perform essential job functions in violation of the DOT regulations enforcing section 504 of the Rehabilitation Act, 49 C.F.R. § 27.35.

The plaintiffs are also subject to drug testing under circumstances that are not related to job performance or safety considerations and, as such, the defendants have violated the plaintiffs' right to be secure from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

The defendants are also alleged to have violated the plaintiffs' constitutional right to privacy by prohibiting the plaintiffs from using any controlled substances at any time, including off-duty hours, and by disciplining and disqualifying persons who used controlled substances while off-duty.

The plaintiffs also generally allege that the defendants have violated certain New York State protections, as follows:

"A. discriminated against plaintiffs on the basis of disability in violation of the

New York State Human Rights Law, N.Y.Exec.L. Section 296.1(a) and (d);

B. violated plaintiffs' rights under the Due Process and Equal Protection Clauses of the New York State Constitution, Article 1, Section 6 and 11; and

C. violated plaintiffs' right to be secure against unreasonable searches and seizures under the New York State Constitution, Article 1, Section 6, 11, and 12" (Amended Complaint ¶ 304).

## II. THE CAUSES OF ACTION

The Amended Complaint, which seeks compensatory damages, awards of back pay, injunctive and declaratory relief, refers to numerous statutes, laws, regulations and constitutional provisions throughout, but alleges only the following six causes of action:

(1) violation of 42 U.S.C. § 1981, by depriving the plaintiffs of their Fifth and Fourteenth Amendment rights based on the plaintiffs' discharge from employment with the TA without first providing notice and an impartial and fair hearing;

(2) violation of various provisions of the New York State Constitution, the New York State Public Authority Law § 1210 and New York Civil Service Law § 75, for the plaintiffs' discharge from employment with the TA without first providing notice and an impartial and fair hearing;

(3) violation of 42 U.S.C. § 1981, by depriving the plaintiffs of their Fifth and Fourteenth Amendment rights based on the plaintiffs' discharge from employment without providing notice and an impartial and fair hearing;

(4) violation of 42 U.S.C. § "1871" [sic][2], by depriving the plaintiffs of their Fifth and Fourteenth Amendment rights based on "harassment, oppression, intimidation, coercion, bad faith, employment discrimination, cover-up and retaliation directed at the plaintiffs";

(5) violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, by allegedly brib-

**2.** Although the Amended Complaint cites to 42 U.S.C. § 1871, no claim under the patent laws has been alleged or stated.

ing public officials and arbitrators to influence their actions and by using inaccurate and unreliable drug-testing results to discipline, terminate and otherwise harass the plaintiffs; and

(6) violation of 42 U.S.C. § 1983, by depriving the plaintiffs of their Fourth Amendment rights based on requiring TA employees to submit to drug urinalysis testing without any reasonable suspicion.

## III. PROCEDURAL SETTING

The plaintiffs filed the original Complaint on July 6, 1990. At that time, the defendants moved for a more definite statement in August 1990. The parties thereafter entered into a stipulation, providing that the plaintiffs would serve an Amended Complaint, and the defendants would withdraw the motion for a more definite statement. After the plaintiffs served the Amended Complaint, the present motion to dismiss was made.

## IV. THE MOTIONS

The defendants move to dismiss the Amended Complaint pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon the grounds that the allegations of discrimination are conclusory; and the claims for relief under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, RICO, the Rehabilitation Act, 29 U.S.C. § 794 and 42 U.S.C. § 2000e–5 have not been sufficiently stated. The defendants also move to dismiss some of the claims as barred by the statute of limitations and also seek to dismiss the pendent state-law claims. The defendants also move pursuant to Fed.R. Civ.P. 12(f) to strike all redundant, immaterial, impertinent and scandalous matter from the Amended Complaint.

■ Certain of the plaintiffs, namely, Ella Hill, Gina Marsh and Jane Best–Simpson, cross-move to withdraw as plaintiffs in this action. The remaining plaintiffs are apparently relying on the Amend-

ed Complaint to speak for itself, since they have submitted no opposition to the defendants' motion to dismiss.[3]

## V. DISCUSSION

As stated above, the Amended Complaint contains only six causes of action, but makes numerous references to miscellaneous laws, regulations, Constitutional provisions and policy statements. The Court considers, however, the defendants' motion to dismiss as directed to the six enumerated causes of action.

The Court will first consider the plaintiffs' motion to withdraw and then the defendants' motions to dismiss and strike material from the complaint.

### (a) *Plaintiffs' Motion to Withdraw:*

■ Plaintiffs Ella Hill, Gina Marsh and Jane Best–Simpson move to withdraw as named plaintiffs in this action, on the ground that "[a]ll three have pending state claims which would be jeopardized, if they were to continue as parties in the proposed class action" (Plaintiffs' Memorandum of Law at p. 2). In support of this cross-motion, these plaintiffs rely on Fed.R.Civ.P. 21, which provides as follows:

"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claims against a party may be severed and proceeded with separately."

Although not objecting to the withdrawal of these plaintiffs from the action, the defendants contend that the more appropriate procedural vehicle is Fed.R.Civ.P. 41(a)(1)(i). This rule essentially provides that a plaintiff may dismiss an action without an order of the court by the mere filing of a notice of dismissal at any time before service by the defendant of an answer or of a motion for summary judgment. Since

---

**3.** The Court notes that, although not inclined to do so, the plaintiffs' failure to oppose this motion to dismiss could, in and of itself, be grounds to grant the defendants' motion by de-

fault (*see* Rule 3[b] of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York).

the defendants have neither answered, nor moved for summary judgment, they contend that Rule 41(a)(1)(i) governs, rather than Rule 21.

Whether the Court chooses to invoke Fed.R.Civ.P. 41 or 21 to permit these three plaintiffs to withdraw from this action, is immaterial and of no practical consequence (*see Altman v. Liberty Equities Corp.*, 54 F.R.D. 620, 623–24 [S.D.N.Y.1972]). In this Court's view, under these circumstances, it would merely be an academic exercise to decide which is the more "appropriate" Rule, since the courts are apparently split on the issue of which Rule governs such a situation (*see, e.g.*, 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2362, at p. 149–150 [1971]), and, in any event, the defendants do not object to the ultimate result, namely, that the plaintiffs Ella Hill, Gina Marsh and Jane Best–Simpson be eliminated as plaintiffs in this action in order to pursue their pending state claims.

Accordingly, the motion of the plaintiffs Ella Hill, Gina Marsh and Jane Best–Simpson to withdraw as plaintiffs, is granted in all respects.

(b) *Defendants' Motion to Dismiss:*

### 1. *Standard of Review.*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" (*Goldman v. Belden*, 754 F.2d 1059, 1065 [2d Cir.1985], *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957]; *see also Branum v. Clark, supra*). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient" (754 F.2d at p. 1067). In assessing the sufficiency of a pleading on a motion to dismiss, it is well settled that the court must, of course, accept the allegations of the complaint as true (*see Procter & Gam-*

*ble Co. v. Big Apple Indus. Bldgs., Inc., supra*, 879 F.2d at p. 14), and draw all reasonable inferences favorably to the plaintiff (*see Scheuer v. Rhodes, supra*, 416 U.S. at p. 236, 94 S.Ct. at p. 1686; *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 [2d Cir.1988], *cert. denied sub nom. Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 [1989]).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8[a][2]), and that "[a]ll pleadings shall be so construed as to do substantial justice" (Fed.R.Civ.P. 8[f]).

With these principles in mind, the Court turns to the merits of the defendants' motion to dismiss.

### 2. *Equal Rights Under the Law.*

The plaintiffs allege violation of 42 U.S.C. § 1981, which provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens". Section 1981, however, is not "a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination *only in the making and enforcement of contracts*" (*Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 [1989] [emphasis supplied]).

As the *Patterson* Court held, "the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions" (*id.* at p. 177, 109 S.Ct. at p. 2373). Furthermore, as the Second Circuit recently reiterated, a discriminatory termination of an employment contract is not within the coverage of section 1981:

"Discharge from employment involves neither the making nor the enforcement of a contract, but rather conduct subse-

quent to the formation of the contract. Accordingly, as this Court has previously concluded, an allegedly discriminatory termination of a contract is not actionable under section 1981" (*Patterson v. Intercoast Management of Hartford, Inc.*, 918 F.2d 12, 14 [2d Cir.1990] [Altimari, J.] [citations omitted] ).

■ Based upon the foregoing, since no named plaintiff has alleged racial discrimination in either the formation or enforcement of a contract, the claims under section 1981 are dismissed.

In this regard, the Court notes that the plaintiffs generally allege that minority applicants for employment with the defendants have been discriminated against on the basis of race. Although this might arguably come within the coverage of section 1981 as to the "formation" of an employment contract, none of the named plaintiffs in this action are within that class of persons.

Accordingly, the motion of the defendants to dismiss the claims based on 42 U.S.C. § 1981, is granted, and those claims, namely, the first, third and fourth causes of action,[4] are dismissed as a matter of law.

### 3. *Conspiracy to Violate Constitutional Rights (§ 1985).*

The plaintiffs allege violation of 42 U.S.C. § 1985, namely, conspiracy to interfere with civil rights. The defendants challenge this cause of action on the ground that the allegations of conspiracy are vague and conclusory.

Although the Amended Complaint fails to state the particular subdivision of section 1985 under which the plaintiffs are proceeding, viewing the Amended Complaint on the whole, it appears that they are invoking section 1985(3).

■ In order to state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege that the defendants (1) engaged in a conspiracy, (2) for the purpose of either directly or indirectly depriv-

ing him or a class of persons of which he is a member, of equal protection of the laws; and that (3) acts taken by the defendant in furtherance of the conspiracy (4) deprived him, or the class, of the exercise or privilege of a citizen of the United States (*see New York State NOW v. Terry*, 886 F.2d 1339, 1358 [2d Cir.1989], *cert. denied*, — U.S. —, 110 S.Ct. 2206, 109 L.Ed.2d 532 [1990]; *see also Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338; *Sorlucco v. New York City Police Dep't*, 888 F.2d 4, 8 [2d Cir. 1989] ). Under section 1985, a plaintiff must also demonstrate " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' " (*New York State NOW v. Terry, supra*, 886 F.2d at p. 1358, *quoting Griffin v. Breckenridge, supra*, 403 U.S. at pp. 102–03, 91 S.Ct. at pp. 1798–99). Although the precise reach of section 1985(3) remains somewhat unresolved, it is clearly aimed at class-based animus directed toward race (*see, e.g., United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 835–37, 103 S.Ct. 3352, 3359–61, 77 L.Ed.2d 1049 [1983] ).

As the Second Circuit recently stated in *Spencer v. Casavilla*, 903 F.2d 171 (2d Cir.1990):

"Because this section provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates' ..., in order to state a claim under § 1985(3) a complaint must allege, *inter alia*, that the defendants who allegedly conspired sought, with discriminatory intent, to deprive the plaintiff of a right covered by the Constitution or other laws" (*id.* at p. 174 [citations omitted] ).

■ The Amended Complaint alleges that the defendants engaged in a conspiracy for the purpose of depriving them and others similarly situated of equal protection of the laws, and that acts taken by the defendants in furtherance of the conspiracy have in fact deprived the plaintiffs of the

---

**4.** As stated above at footnote 2, the fourth cause of action is stated to be based on violation of 42 U.S.C. § 1871. The Court assumes this to be a typographical error, and that the plaintiffs are actually relying on 42 U.S.C. § 1981.

exercise of privileges of citizens of the United States. The plaintiffs also allege that they are members of a protected class, namely, blacks. It is further alleged that the defendants conspired to deprive the plaintiffs of their Fourth, Fifth and Fourteenth Amendment rights insofar as they have selectively subjected black employees to mandatory drug testing, and have not required the same of similarly situated white employees. The Amended Complaint also alleges that the defendants have subjected black employees at the TA to discipline when, under the same circumstances, whites are not, and that the terms and conditions of employment for the plaintiffs are less favorable than those of similarly situated white employees.

■ The plaintiffs have clearly alleged facts couched in the required statutory and constitutional language. However, these facts are mere conclusory assertions, and the Amended Complaint is devoid of any specifics whatsoever to support these conclusions. For example, no facts are set forth as to the roles of each of the defendants who allegedly participated in this conspiracy, or *how* the terms and conditions of employment differ among the TA employees, or the actual overt acts of the conspiracy. A constitutional conspiracy claim must be pled with at least some degree of particularity (*see Bertucci v. Brown*, 663 F.Supp. 447, 454 [E.D.N.Y. 1987]; *see also Neustein v. Orbach*, 732 F.Supp. 333, 346 [E.D.N.Y.1990] ["allegations that Orbach engaged in a conspiracy ... are no more than naked improbable unsubstantiated assertions without any specifics"] ).

Accordingly, pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiffs' claims under 42 U.S.C. § 1985(3), are dismissed for failure to state a claim. The plaintiffs are, however, granted leave to replead these claims in a more particularized fashion (*see Branum v. Clark*, 927 F.2d 698, 704 [2d Cir. 1991] ["dismissal [under Rule 12(b)(6) ] ordinarily should be accompanied by leave to file an amended complaint"] ).

### 4. *Violation of Constitutional Rights (§ 1983).*

The sixth cause of action of the Amended Complaint alleges violation of 42 U.S.C. § 1983, based on the defendants' alleged deprivation of the plaintiffs' Fourth Amendment rights by requiring TA employees to submit to drug urinalysis testing without first having any degree of reasonable suspicion and without regard to whether the employee is in a "safety sensitive" position or not.

Section 1983 provides redress to a plaintiff who demonstrates that he or she has been deprived of a constitutional right by a person acting under color of state law (*see* 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 [1978] ). In order to state a claim under section 1983, the plaintiff must establish the following:

> " 'First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law." ' "
> (*Fine v. City of New York*, 529 F.2d 70, 73 (2d Cir.1975), *quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 [90 S.Ct. 1598, 1604, 26 L.Ed.2d 142] (1970).

■ Although the Court is mindful of the liberal notice pleading requirements of Fed.R.Civ.P. 8(a)(2), "[i]f a civil rights complaint is to survive a motion to dismiss, it must make specific factual allegations indicating a deprivation of rights" (*Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 [2d Cir.1988] [citations omitted] ). Broad or vague conclusory statements are insufficient to state a cognizable claim under section 1983 (*see Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 [2d Cir.1987] ).

In the context of a similar challenge made to the TA's drug testing policy, an-

other District Court within this Circuit stated the following:

"Plaintiffs argue that the TA took urine from employees and applicants in an unconstitutional manner. The Fourth Amendment's prohibition against unreasonable searches and seizures applies to searches and seizures authorized by the TA, an arm of the state and municipal governments. *Skinner v. Railway Labor Executives Association*, 489 U.S. 602, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989). Under Supreme Court precedent, the TA's taking of urine from a public employee or an applicant constitutes a search and 'must meet the reasonableness requirement' [*National Treasury Employees Union v.*] *Von Raab* [489 U.S. 656] 109 S.Ct. [1384] at 1390 [103 L.Ed.2d 685 (1989)]; *Skinner*, 109 S.Ct. at 1412–13; *see also O'Connor v. Ortega*, 480 U.S. 709, 717, 107 S.Ct. 1492, 1497, 94 L.Ed.2d 714 (1987) (plurality opinion) (Fourth Amendment protects government employees from unreasonable searches). The reasonableness of a search depends upon a balance of individual privacy interests and legitimate government interests. *Von Raab*, 109 S.Ct. at 1390; *Skinner*, 109 S.Ct. at 1414." (*Burka v. New York City Transit Auth.*, 739 F.Supp. 814, 819 [S.D.N.Y. 1990] [footnote omitted]).

Here, the Amended Complaint clearly sets forth an alleged constitutional deprivation, namely, based on the Fourth Amendment, by reason of the TA's drug testing policy of requiring mandatory urinalysis of employees without any degree of reasonable suspicion and without regard to whether the position is "safety related" or not. In this Court's view, consistent with Fed.R.Civ.P. 8(a)(2), and assuming the truth of the allegations, the plaintiffs have sufficiently set forth a cause of action under section 1983, at least at this threshhold pleading stage, based upon the alleged violation of their Fourth Amendment rights.

Accordingly, the motion of the defendants to dismiss the claims based on 42 U.S.C. § 1983, is denied.

5. *Rehabilitation Act Claim.*

Although the Amended Complaint fails to separately delineate a separate cause of action for violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the pleading contains many references to that statute, and the defendants move to dismiss these allegations.

Section 504 prevents an employer receiving federal financial assistance from discriminating against an "otherwise qualified" individual with a handicap (29 U.S.C. § 794[a]). The Act's definition of such an individual includes a person with a "physical or mental impairment" (29 U.S.C. § 706[8][B]), which has been construed by the courts to include substance abuse as a protected handicap (*see* Note, *Urine Testing, Testing–Based Employment Decisions and the Rehabilitation Act of 1973*, 22 Colum.J.L. & Soc.Probs. 219, 248–66 [1989]).

The plaintiffs allege that the TA's drug testing policy discriminates against "handicapped individuals", namely, those persons who test positive for drug use. However, in order to show that the New York City Transit Authority workers who test positive for drug use are "individuals with a handicap" within the meaning of the Rehabilitation Act, it must be alleged that they are *rehabilitated* substance abusers or individuals *currently* undergoing treatment (*Burka v. New York City Transit Auth.*, 680 F.Supp. 590, 600 n. 18 [S.D.N.Y. 1988]).

The plaintiffs have failed to allege that they are rehabilitated substance abusers or that they are currently undergoing treatment which, in this Court's view, is fatal to this claim as a matter of law. Therefore, any claims alleging violation of section 504, to the extent they have been pled at all, are dismissed.

6. *RICO Cause of Action.*

Section 1962 of RICO makes it unlawful to: (a) invest income "derived from a pattern of racketeering activity" in an interstate enterprise; (b) acquire or maintain an interest or control in an enterprise "through a pattern of racketeering"; (c)

participate in the conduct of an enterprise's affairs "through a pattern of racketeering"; or (d) conspire to violate any of these substantive prohibitions (*see* 18 U.S.C. § 1962). Section 1964(c) creates a private right of action.

The threshold pleading requirements of a private action under section 1962 of RICO were set forth in *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), as follows:

> "To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as 'criminal RICO.' In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.... Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden —*i.e.,* invoking RICO's civil remedies of treble damages, attorneys fees and costs.... To satisfy this latter burden, plaintiff must allege that he was 'injured in his business or property *by reason of* a violation of section 1962'" (*id.* at p. 17 [citations omitted]).

 The defendants challenge the sufficiency of the RICO claims alleged in the Amended Complaint on the ground that the plaintiffs have failed to allege two or more predicate acts sufficient to form the basis of a RICO action. In addition, the defendants contend that the Amended Complaint fails to set forth a claim of conspiracy to violate RICO under section 1962(d).

Sections 1962(b) and (c) of RICO prohibit conducting the affairs of an enterprise, as well as acquiring an interest in an enterprise, through a "pattern of racketeering activity". The term "racketeering activi-

ty" refers to the predicate acts necessary to sustain a RICO claim. The predicate acts include, *inter alia,* violent crimes (*e.g.,* murder, kidnapping), pornography, narcotics trafficking, gambling, embezzlement, bribery, securities fraud, mail fraud and wire fraud (*see* 18 U.S.C. § 1961[1]).

The plaintiffs apparently rely on acts of bribery, although the Amended Complaint fails to state which bribery statute they are proceeding under to supply the predicate acts (*see* 18 U.S.C. § 1961[1][A] or [B]). The plaintiffs also rely on violations of wire fraud (*see* 18 U.S.C. § 1961[1][B]).

The alleged acts of bribery involve Arbitrator Simmelkjaer, whereby the defendants allegedly offered Arbitrator Simmelkjaer a part-time position with the TA for $80,000 per annum while plaintiff Laverpool's arbitration hearing concerning his dismissal was then pending before him. The second alleged act of bribery is the alleged attempt to bribe public officials to obtain the necessary certificates of license for Compuchem to operate the testing laboratory. As stated above, the Amended Complaint does not state anywhere whether the acts are alleged to constitute bribery under federal or state law.

The Court finds that a bribery claim under the federal statute is inapplicable. Pursuant to 18 U.S.C. § 201 (bribery of a public official), the person receiving the alleged bribe must be a *federal* official as defined in 18 U.S.C. § 201(a)(1). Arbitrator Simmelkjaer is not a federal official. As to the alleged bribe of "public officials" involving Compuchem, nowhere is it alleged in the Amended Complaint that these "public officials" are federal officials.

Similarly, under state law, namely, New York Penal Law §§ 180.00–180.55 (bribery not involving public servants) and 200.00–200.50 (bribery involving public officials), the Amended Complaint not only fails to state which of the state statutes the plaintiffs are relying upon, but it also fails to set forth sufficient allegations to determine whether the acts constitute "bribery". It does not set forth in any detail the circumstances of the alleged Compu-chem bribe, including the persons involved, which

would give the defendants notice of the statute they are alleged to have violated.

For example, "commercial bribery in the second degree" under New York's Penal Law § 180.00, occurs when a person, "confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs". The Amended Complaint does not allege any of these elements.

Similarly, "bribery in the third degree" (N.Y. Penal Law § 200.00), states that it is unlawful when a person "confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced". Again, the Amended Complaint fails to set forth the elements of this "crime", including that the Arbitrator is a "public servant".

In sum, the Amended Complaint does not sufficiently set forth acts of "bribery" within either the federal or state bribery laws so as to constitute predicate "racketeering acts".

■ The second type of predicate act that the plaintiffs rely on to state a claim under RICO is wire fraud (*see* Amended Complaint ¶ 293). If wire fraud is relied upon as the predicate "racketeering activity", the plaintiffs must plead the fraud element with particularity (*see* Fed.R.Civ.P. 9[b]). In *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), Judge Newman described the applicable standard in pleading mail or wire fraud as predicate acts under RICO, as follows:

"In general, the mail and wire fraud statutes require, *inter alia*, a showing of intentional fraud ... [and] plaintiffs must ... provide some factual basis for

conclusory allegations of intent.... These factual allegations must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent.

\* \* \* \* \* \*

A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so.... Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, ... though the strength of the circumstantial evidence must be correspondingly greater" (citations omitted).

The only allegation of wire fraud appears in paragraph 293 of the Amended Complaint. The allegation is a mere conclusory assertion that the defendants have committed wire fraud. No facts are alleged showing a motive for committing fraud and a clear opportunity to do so. In addition, the Amended Complaint is devoid of any allegations of the participants, the place, the method or any circumstances of the alleged fraud. Accordingly, the complaint fails to sufficiently allege wire fraud as a predicate act or "racketeering activity".

Based on the above, the Court finds that the plaintiffs have failed to allege any predicate acts which could constitute a "pattern of racketeering activity" to sustain a RICO cause of action. Accordingly, the defendants' motion to dismiss the RICO claim, is granted.[5]

Although not specifically enumerated, it appears from the Amended Complaint that the plaintiffs also allege conspiracy to violate RICO under section 1962(d).

■ Section 1962(d) makes it unlawful to conspire to violate any of its substantive provisions. Although there need not be proof of overt acts to show a violation of section 1962(d), in order "[t]o state a claim for RICO conspiracy, plaintiff must allege

---

**5.** The Court notes that the defendants' only challenge to the RICO cause of action is the absence of predicate acts. Thus, although the Court may be troubled by deficiencies as to the remaining elements of the RICO cause of action, those challenges were not raised in the posture of this motion, and the Court declines to address them *sua sponte.*

that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise" (*First City Nat'l Bank & Trust Co. v. FDIC*, 730 F.Supp. 501, 509 [E.D.N.Y.1990] [McLaughlin, J.]). Bare or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud (*see Grunwald v. Bornfreund,* 668 F.Supp. 128, 133 [E.D.N.Y.1987]; *see generally* D. Smith & T. Reed, *Civil RICO* ¶ 7.02[6][a][ii] [1990]).

▇ Significantly absent from the pleading are any allegations of specific facts that each of the individual defendants, by words or actions, manifested an agreement to commit two or more of the predicate acts (*see Morin v. Trupin,* 711 F.Supp. 97, 111 [S.D.N.Y.1989]). It is not clear from the face of the pleading how, or even if, each defendant participated in the alleged conspiracy to violate RICO, and the extent and nature of the roles of each of the defendants. In addition, as stated above, the plaintiffs have not stated a claim under any of RICO's substantive provisions.

Accordingly, to the extent that the plaintiffs allege a claim under section 1962(d) for conspiracy to violate RICO, the Court finds that the Amended Complaint fails to state a viable claim under 18 U.S.C. § 1962(d), and therefore that portion of the plaintiffs' RICO claim, if alleged, is dismissed.

### 7. *Statute of Limitations.*

▇ The defendants move to dismiss certain portions of the claims asserted under 42 U.S.C. §§ 1981, 1983 and 1985, and RICO, as well as the claims under CPLR Article 78.[6]

The defendants move to dismiss only portions of claims and not any claims in their entirety. As such, at this time, the Court

---

6. The Court notes that the plaintiffs have not sought relief under CPLR Article 78 in any one

finds that questions of fact exist precluding the dismissal of parts of the claims, based on the defense of statute of limitations. In addition, the defendants fail to articulate what claims or portions of claims are time barred and simply allege, in conclusory terms, that the statute of limitations is a bar.

### 8. *Pendent Claims.*

▇ The defendants move to dismiss the pendent state-law claims in the event that the federal claims are dismissed. Although it is difficult to discern the precise claims alleged under state law, in the exercise of discretion, the Court nevertheless exercises pendent jurisdiction over them, since the claim under 42 U.S.C. § 1983 has not been dismissed and the plaintiffs are granted leave to replead some of the other federal claims in any event (*see United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 [1966]). Accordingly, the defendants' motion to dismiss the pendent claims is denied.

### (c) *Defendants' Motion to Strike Material:*

▇ The defendants move pursuant to Fed.R.Civ.P. 12(f), to strike all redundant, immaterial and impertinent matter from the Amended Complaint. Particularly objectionable to the defendants are the phrases "counter intelligence", "minority hit list" (Amended Complaint ¶¶ 22, 123–28, 149, 152 and· 290) and "lame ducks" (Amended Complaint ¶¶ 47, 50, 53 and 56). In addition, the defendants contend that the complaint is "extremely lengthy" and merely "repeats and realleges the same things over and over" (Defendants' Memorandum of Law at p. 27).

Rule 12(f) provides, in relevant part:
"... the court may order stricken from any pleading any ... redundant, immaterial, impertinent, or scandalous matter."

▇ In order to strike immaterial and impertinent matter from the pleading, it must be demonstrated "that no evidence in

---

of the six causes of actions of the Amended Complaint.

support of the allegation would be admissible" (*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 [2d Cir.1976]), that the allegations have no bearing on the issue, and that to permit the allegations to stand would result in prejudice to the movant (*see Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 402 F.Supp. 636, 637–38 [S.D.N.Y.1975]; *see also* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1382, at pp. 683–85 [2d ed. 1990] [such motions "will be denied unless the allegations have no possible relation to the controversy"]).

While the defendants are correct insofar as the Amended Complaint "repeats and realleges the same things over and over" (Defendants' Memorandum of Law at p. 27), they have not demonstrated that the allegations sought to be stricken have no relation to the controversy or that prejudice would result to them if the allegations remain in the pleading.

Accordingly, the motion of the defendants to strike matter from the pleading is denied.

## VI. CONCLUSION

Based upon the foregoing, the Court determines the motions as follows:

(1) The motion of the plaintiffs Ella Hill, Gina Marsh and Jane Best–Simpson to withdraw from this action and be eliminated as named plaintiffs is granted. The caption of this action shall be amended accordingly.

(2) The motion of the defendants to dismiss the claims asserted under 42 U.S.C. § 1981, is granted, and therefore the first, third and fourth causes of action are dismissed in their entirety, as a matter of law.

(3) The motion of the defendants to dismiss the claims asserted under 42 U.S.C. § 1985, is granted, with leave to replead.

(4) The motion of the defendants to dismiss the claims asserted under 42 U.S.C. § 1983, is denied.

(5) The motion of the defendants to dismiss the claims under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, is granted, and these claims, to the extent that they are pled at all, are dismissed, with leave to replead.

(6) The motion of the defendants to dismiss both the substantive and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, is granted, and therefore the fifth cause of action is dismissed, with leave to replead.

(7) The motion of the defendants to dismiss based on the defense of statute of limitations, is denied.

(8) The motion of the defendants to dismiss the pendent state-law claims, is denied.

(9) The motion of the defendants to strike all redundant, immaterial or impertinent matter from the Amended Complaint pursuant to Fed.R.Civ.P. 12(f), is denied.

In view of the lack of opposition to this motion to dismiss and the implications which may be derived therefrom, the plaintiffs are directed to serve and file a Second Amended Complaint within forty-five (45) days from this date, consistent with the findings and dispositions contained in this opinion. The Clerk of the Court shall serve a copy of this opinion and order on the attorney for the plaintiffs by certified mail, return receipt requested, on or before April 2, 1991. In the event that the plaintiffs' fail to serve and file the Second Amended Complaint within this time, the defendants may move to dismiss the causes of action that have been dismissed in this order, which dismissal will be with prejudice.

SO ORDERED.